The opinion of the court was delivered by

Mr. Justice Huger.

The political situation of Spain, anterior to 1819, was. disturbed and revolutionary. The Spanish empire was falling to pieces, and the mother country was unable to preserve order and peace in her colonies. The contiguity of East Florida i» the United States imposed on. the general government the duty *284 bf adopting measures for the protection of our southern frontier. A lawless inób having possessed themselves of Amelia Island (the northern extremity of East Florida) put at defiance-the constituted authorities of the province, and threatened the peace of the United States. Under these circumstances, the-general government thought proper to take military possession of that part of Florida which-was immediately contiguous to Georgia. This precautionary measure gave no umbrage to .Spain. She appears to have been satisfied that the United States acted -in good faith. Subsequent to this, in February, .1819, the treaty of session was signed at Washington, andra-lified by our government. Provision was made in this tie -ty for a ratification by Spain in six months after its date. This however was not done until October, 1820; during this interval the government of Florida and th.e magistrates were unable to afford protection to the inhabitants living to the north of the St. -John’s river, they were referred to the United States’ army for protection, accompanied with an acknowledgment of theii-imbecility and a request to the officer commanding the United. '^States’ troops, that he would afford protection. The power, •of Spain had ceased and that of the United States had commenced; it was therefore incumbent on them to afford protec-ton, for wherever sovereign power exists there have the governed a right to look for protection. A government can only act by its agents, and the agents of the United States in Florida were the arnry: the army therefore was hound to afford the protection required. It .certainly did not lie with the plaintiff, who was a foreigner to both governments, to dispute an authority sanctioned by both.
It is difficult to imagine a case which could present a-stronger claim to the protection of the sovereign power than the one before the -court A foreigner gets into the country, with a cargo of convicts, under the pretence of settling there, lie sells his cargo, in opposition to the known laws and policy of the province, as well as of the United States. The convicts, .as he must have expected, raise the standard of insurrection, ■alike dangerous to .Florida .and Georgia; they arm themselves,. *285 steal, rob and threaten the destruction of the weak and defenceless, and then he complains that the power in the exercise of sovereignty interfered to prevent the consummation of mischiefs* against which humanity alone afforded a sufficient authority to? act, and which interference the laws of nature and nations imperatively demanded. • 1 can see no ground on which the plaintiff can recover; the interference on the part o.f defendant was ¡authorised by the government. No more force was used than ivas sufficient to quell the insurrection, and their ..detention lasted no longer than the government supposed necessary to the occasion. _ The unfortunate accident which happened was the .effect of an attempt to escape on the part of one of the prison-¡firs for which the defendant is not answerable.
Gadsden and Petigru, for motion.
Grimhe, cpntra..
The motion must, therefore, be granted,
jBay and Johnson, Justices concurred.